1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  ALTURAS INDIAN RANCHERIA,          No.  CIV. S-10-1997 LKK/EFB

12           Plaintiff,

13      v.                             **ORDER**

14  KENNETH L. SALAZAR, et al.,

15           Defendants.

16

17

18      This is a proceeding brought by plaintiff Indian tribe to

19  determine whether the government is in contempt of the court's

20  January 13, 2012 order in this case (ECF No 126).  Plaintiff

21  asserts that the following portion of the court's order required

22  the government to pay "contract support costs" associated with

23  the "self-determination" contracts it entered into with

24  plaintiff:

25          The BIA has approved the Tribe's self-
            determination contract requests for the
26          fiscal years 2009, 2010, 2011, and 2012, and
            shall transfer the amounts provided in those
27          requests to the Tribe's bank account … in
            accordance with the terms contained in the
28          contract award documents.

                              1

1    Order of January 13, 2012, ECF No. 126 ¶ 2 ("Settlement Agreement

2    and Stipulation for Entry of Judgment and Order").

3        For the reasons that follow, plaintiff's request to enforce

4    the judgment or for a contempt order will be denied.

5                        I.    BACKGROUND

6        Plaintiff Alturas Indian Rancheria (the "Tribe") is a

7    federally recognized Indian tribe.  Pursuant to the Indian Self-

8    Determination and Education Assistance Act ("ISDA"), 25 U.S.C.

9    §§ 450, et seq., the Secretary of the Interior "is directed" to

10   enter into "self-determination" contracts with willing tribes,

11   "pursuant to which those tribes will provide services such as

12   education and law enforcement that otherwise would have been

13   provided by the Federal Government."  Salazar v. Ramah Navaho

14   Chapter, 567 U.S. ___, 132 S. Ct. 2181, 2186 (2012).[1]  Under the

15   _____

16   [1] The government has submitted "Supplemental Briefing" (ECF
     No. 140), asserting that plaintiff is a class member in Salazar
17   (Ramah Navajo Chapter v. Lujan, Civ. No. 1:90-cv-00957-LH-KBM
     (D.N.M.) (Hansen, J.).  As a result, the government argues,
18   "unless the Tribe can show that it has opted out of the Ramah
     class, the Tribe should not be allowed to pursue its claim for
19   contract support costs under its ISDEAA [ISDA] contracts here."
     ECF No. 140 at 2.  There are at least two obvious problems with
20   the government's assertion.  First, the government has not
     attached the operative complaint or class certification order in
21   Ramah so that this court could determine whether plaintiff
     actually is a member of the class.  Second, the Ramah litigation
22   was commenced 23 years ago, in 1990, and the class was certified
     20 years ago, in 1993.  See Ramah Docket Nos. 1 & 96.  The time
23   for the government to notify the court that plaintiff was barred
     from pursuing its claims was 13 years ago, when plaintiff filed
24   this lawsuit against the government, not two weeks ago.  This
     lawsuit has now been litigated all the way to a final judgment by
25   settlement, and accordingly, there is no longer a "claim" to be
     barred by plaintiff's alleged class membership.  Rather,
26   plaintiff seeks to enforce the judgment which both parties agreed
     to in this litigation.  In short, this contempt proceeding is not
27   barred by plaintiff's alleged membership in the Ramah class.

28                              2

1   ISDA, once the Tribe has submitted a proposal for a self-

2   determination contract, "or a proposal to amend or renew" such a

3   contract, the Secretary "shall" approve the proposal and award

4   the contract within ninety (90) days, unless an enumerated reason

5   for refusal exists.  25 U.S.C. § 450f(a)(2).

6        The amount of funds provided to the Tribe under these

7   contracts is to be no less than the amount the Secretary would

8   have spent to run the program, plus "contract support costs."  25

9   U.S.C. § 450j-1(a)(1) & (2) ("There shall be added to the amount

10  required by paragraph (1) contract support costs which shall

11  consist of an amount for the reasonable costs for activities

12  which must be carried on by a tribal organization as a contractor

13  to ensure compliance with the terms of the contract and prudent

14  management"); Salazar, 132 S. Ct. at 2186 ("ISDA mandates that

15  the Secretary shall pay the full amount of 'contract support

16  costs' incurred by tribes in performing their contracts").[2]

17       Late in 2008, the Tribe wrote to the Bureau of Indian

18  Affairs ("BIA"), requesting a renewal of its "2008 Annual Funding

19  Agreement" (the self-determination contract), for the 2009 fiscal

20  year.  Declaration of Terry J. Lincoln [for Defendants] ("Lincoln

21  Decl.") (ECF No. 137-1) ¶ 4 & Exh. 1.  On January 15, 2009, the

22  Tribe entered into the requested "self-determination" contract

23  with BIA.  BIA paid the requested funding on March 12, 2009.

24  Lincoln Decl. ¶ 4.  At some unspecified "later" date in 2009, BIA

25

26  _____

    [2] See also, Cherokee Nation of Oklahoma v. Leavitt, 543 U.S. 631,
27  634 (2005) (when the government enters into contracts promising
    to pay contract support costs, that promise is legally binding).
28

1  agreed to pay contract support costs as well as additional funds

2  under the contract.  Lincoln Decl. ¶ 4.  However, by that time,

3  the Tribe was embroiled in a dispute over who was a member of the

4  Tribe and who represented the Tribe.  Declaration of Wayne Smith

5  [for Plaintiff] ("Smith Decl.") (ECF No. 130) ¶ 3.  The contract

6  support costs, and the additional 2009 funds, were accordingly

7  not paid until that dispute was resolved.  Lincoln Decl. ¶ 4.

8      While the Tribe's leadership dispute was on-going, the BIA

9  declined to enter into self-determination contracts with the

10  Tribe.  Smith Decl. ¶ 4.  The Tribe thereupon filed this lawsuit

11  to compel the Secretary to award the self-determination contract

12  for 2010.

13      On January 5, 2012, after the Tribe had resolved its

14  internal power struggle,[3] the Tribe and BIA settled their dispute

15  by signing an agreement to cover the Tribe's self-determination

16  contract requests for 2009, 2010, 2011 and 2012.  See Smith Decl.

17  ¶ 7 & Exh. 1 (attached self-determination contract includes "the

18  grant funding for 2010 and 2011 as well as the funding for

19  2012");[4] Lincoln Decl. ¶ 7 & Exh. 4 (attached self-determination

20  contract award document includes funding for 2010, 2011 and

21  2012).[5]

22  ───────────────

23  [3] See ECF No. 126 ¶ 1 (resolving the identity of the Tribe's
    governing body).

24  [4] The Tribe asserts that the contract was entered "[s]subsequent"
25  to the court's order.  Smith Decl. ¶ 7.  However, the cited
    document plainly shows that it was signed by both parties on
26  January 5, 2012, before the court's January 13, 2012 order.  See
    Smith Decl. Exh. 1 (ECF No. 131-1 at 1).

27

28  [5] There appears to be no further dispute about the 2009 fiscal
    year contract.  The government paid the agreed-upon amounts,

1   The contract for 2010 calls for $198,562 in funding.  See

2   Lincoln Decl. ¶ 7 & Exh. 4 (ECF No. 137-1 at 35 & 42).  The

3   contract for 2011 calls for $198,547 in funding.  See Lincoln

4   Decl. ¶ 7 & Exh. 4 (ECF No. 137-1 at 14).  For 2012, the contract

5   calls for $198,244 in funding.[6]  See Lincoln Decl.¶ 7 & Exh. 4

6   (ECF No. 137-1 at 35 & 43).  This totals $595,353 for all three

7   years.

8   On January 13, 2012, the court entered a judgment approving

9   the parties' stipulated settlement.  See ECF No. 126.  Pursuant

10  to the settlement and order, the BIA "approved the Tribe's self-

11  determination contact requests for the fiscal years 2009, 2010,

12  2011, and 2012."  ECF No. 126 ¶ 2.  The settlement and order

13  further provided that BIA

14          shall transfer the amounts provided in those
15          requests to the Tribe's bank account … in
            accordance with the terms contained in the
16          contract award documents.

17  Id.

18  Plaintiff seeks a contempt order asserting that the above-

19  quoted language from the court's order requires defendants to pay

20  contract support costs.  Defendants assert that the court's order

21  does not require payment of those costs.

22  ////

23

24  including the contract support costs for that year.

25  [6] In all candor, the court cannot make heads nor tails of the
26  submitted contracts, and does not know how the government reads
    them to call for these amounts.  However, the Tribe does not
27  dispute the government's interpretations of these amounts, so the
    court accepts them as established.

28

5

1
2          **II.   STANDARDS**

The Federal Rules of Civil Procedure provide:

3                  [i]f a judgment requires a party … to perform
                   any … specific act and the party fails to
4                  comply within the time specified, the court
                   may order the act to be done … by another
5                  person appointed by the court. … The court
                   may also hold the disobedient party in
6                  contempt.

7    Fed. R. Civ. P. 70(a) & (e).

8                  In a civil contempt action, "[t]he moving
                   party has the burden of showing by clear and
9                  convincing evidence that the contemnors
                   violated a specific and definite order of the
10                 court."

11   FTC v. Enforma Natural Products, Inc., 362 F.3d 1204, 1211 (9TH

12   Cir. 2004).

13                        **III. ANALYSIS**

14       The question presented here is whether the government should

15   be held in contempt, under Fed. R. Civ. P. 70(e), for failing to

16   pay contract support costs.  Rule 70(e) contempt may issue where

17   the court has required the party to perform any "specific act,"

18   and the party "fails to comply within the time specified."  See

19   Rule 70(a); Westlake North Property Owners Ass'n v. City of

20   Thousand Oaks, 915 F.2d 1301, 1304 (9th Cir. 1990) (this rule

21   applies to parties "who have failed to perform specific acts

22   pursuant to a judgment"); McCabe v. Arave, 827 F.2d 634, 639 (9th

23   Cir. 1987) (Rule 70 "is operative only when a party refuses to

24   comply with a judgment").

25       The court's order of January 13, 2012 ordered the government

26   to pay "the amounts provided in those requests" into the Tribe's

27   bank account "in accordance with the terms contained in the

28   contract award document."  ECF No. 126.  The only specific

                                    6

1  amounts provided in those requests totals $595,353.  Lincoln

2  Decl. ¶ 7.  The government paid $595,353 into the Tribe's bank

3  accounts by July 5, 2012.  None of this is disputed.

4     The Tribe argues that "[t]he Judgment requires that the

5  Federal Defendants pay the contract support costs."  ECF No. 129

6  at 6.  Tellingly, the Tribe never says what specific amount (or

7  even what general neighborhood) those support costs are.

8  Instead, the Tribe relies solely on the following entries in the

9  contract, listed under the title "Catalog of Federal Domestic

10 Assistance (CFDA) – www.cfda.gov":

11     "CFDA Title: Indian Self-Determination Contract Support"

12     "BIA Program Title: TPA/Tribal Government/Contract Support"

13     and

14     "Contract Program Category: <u>Contract Support</u>."

15 Giving the Tribe the benefit of every available inference, the

16 court will tease out of these bare titles and subtitles the

17 conclusion that the contract is a part of the "Indian Self-

18 Determination Contract Support" program, as described within the

19 given website.[7]  However, there is still no way to get out of

20 these lines what <u>specific</u> amount, or even what general amount, or

21 even how to calculate the amount, that the Tribe asserts the

22 court's order requires defendants to pay.

23     Thus, even if the court were to read the contract as saying

24 "The Secretary shall pay contract support costs to the Tribe," it

25

26 [7]  <u>See</u>
   <u>https://www.cfda.gov/index?s=program&mode=form&tab=step1&id=f2b19</u>
27 <u>6f01b9e678326a276341a5836ba</u> (Indian Self-Determination Contract
   Support program), last visited by the court on November 22, 2014.

28

1  is still not specific and definite enough to support a contempt

2  order, since it does not state a specific amount to be paid, a

3  minimum amount to be paid, nor any formula from which the

4  defendants could figure out how much is owed.[8]

5       The court notes that according to the regulations

6  implementing the ISDA, the contract requests "must contain" an

7  identification of "the amount of direct contract support costs,"

8  as well as "[a]n identification of funds the Indian tribe or

9  tribal organization requests to recover for indirect contract

10  support costs."  25 C.F.R. § 900.8(h)(2) & (3).  If the Tribe had

11  complied with this requirement, or if the Secretary had insisted

12  that the Tribe comply, then perhaps there would be a specific

13  amount in the contract to which the court's order could have

14  applied.  For reasons neither side explains, however, the Tribe's

15  contract requests did not include these required, specific

16  contract support cost amounts.  See Smith Decl. ¶ 9 (admitting

17

18  [8] The applicable regulations specify how these costs are
    calculated.  The Secretary determines the amount of indirect
19  contract support costs by: (a) applying the negotiated indirect
    cost rate to the appropriate direct cost base; (b) using the
20  provisional rate; or (c) negotiating the amount of indirect
    contract support.  25 C.F.R. § 1000.140; see Cherokee Nation, 543
21  U.S. at 635 ("Most contract support costs are indirect costs
    'generally calculated by applying an "indirect cost rate" to the
22  amount of funds otherwise payable to the Tribe'").  It is
    undisputed that in this case, the parties reached agreement on
23  the contract support costs on June 25, 2013, 18 months after the
    court's January 13, 2012 order issued.  See Smith Decl. ¶ 8 &
24  Exh. 2 (ECF No. 133-1) ("Indirect Cost Negotiation Agreement"
    dated June 25, 2013).  Even under the Tribe's best interpreta-
25  tion, the court's order did not direct the Secretary to pay a
    specific amount – and could not have done so – when that amount
26  would not be negotiated until a year and a half into the future.
27

28

8

1  that the Tribe and BIA "began negotiating" for contract support

2  costs <u>after</u> the contract was signed, and <u>after</u> the court's order

3  was issued); Salazar Opposition Brief (ECF No. 137) at 5 ("The

4  budget submitted by the Tribe does not specify any amount for

5  contract support costs").

6      It is true that by operation of law, the government is

7  obligated to pay contract support costs related to each of the

8  self-determination contracts.[9]  But the argument does not support

9  a Rule 70(e) <u>contempt</u> citation, which can only apply to the

10  violation of a court judgment, not the violation of a statute.

11                          **IV.   CONCLUSION**

12      By failing to identify the amount of contract support costs

13  applicable to the contract requests, even though such

14  identification was required by the applicable federal

15  regulations, the Tribe has made it impossible to hold defendants

16  in contempt for failing to pay such costs.

17      The Tribe's motion to enforce the judgment and for contempt

18  is therefore **DENIED.**

19      IT IS SO ORDERED.

20      DATED:  November 22, 2013.

21                                    LAWRENCE K. KARLTON
                                      SENIOR JUDGE
                                      UNITED STATES DISTRICT COURT

22

_____

23      [9] "ISDA mandates that the Secretary shall pay the full
    amount of 'contract support costs' incurred by tribes in

24  performing their contracts."  <u>Salazar</u>, 132 S. Ct. at 2186; 25
    U.S.C. § 450j-1(a)(2) ("There shall be added to the amount

25  required by paragraph (1) contract support costs which shall
    consist of an amount for the reasonable costs for activities

26  which must be carried on by a tribal organization as a contractor
    to ensure compliance with the terms of the contract and prudent

27  management").

28