UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTURAS INDIAN RANCHERIA,<br><br>              Plaintiff,<br><br>     v.<br><br>KENNETH L. SALAZAR, et al.,<br><br>              Defendants. | No.  CIV. S-10-1997 LKK/EFB<br><br><br><br>**ORDER** |

This is a proceeding brought by plaintiff Indian tribe to determine whether the government is in contempt of the court's January 13, 2012 order in this case (ECF No 126).  Plaintiff asserts that the following portion of the court's order required the government to pay "contract support costs" associated with the "self-determination" contracts it entered into with plaintiff:

> The BIA has approved the Tribe's self-determination contract requests for the fiscal years 2009, 2010, 2011, and 2012, and shall transfer the amounts provided in those requests to the Tribe's bank account … in accordance with the terms contained in the contract award documents.

1

<a>
</a>

Order of January 13, 2012, ECF No. 126 ¶ 2 ("Settlement Agreement and Stipulation for Entry of Judgment and Order").

For the reasons that follow, plaintiff's request to enforce the judgment or for a contempt order will be denied.

## I.   BACKGROUND

Plaintiff Alturas Indian Rancheria (the "Tribe") is a federally recognized Indian tribe. Pursuant to the Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. §§ 450, et seq., the Secretary of the Interior "is directed" to enter into "self-determination" contracts with willing tribes, "pursuant to which those tribes will provide services such as education and law enforcement that otherwise would have been provided by the Federal Government." Salazar v. Ramah Navaho Chapter, 567 U.S. ___, 132 S. Ct. 2181, 2186 (2012).[1]  Under the

---

[1] The government has submitted "Supplemental Briefing" (ECF No. 140), asserting that plaintiff is a class member in Salazar (Ramah Navajo Chapter v. Lujan, Civ. No. 1:90-cv-00957-LH-KBM (D.N.M.) (Hansen, J.). As a result, the government argues, "unless the Tribe can show that it has opted out of the Ramah class, the Tribe should not be allowed to pursue its claim for contract support costs under its ISDEAA [ISDA] contracts here." ECF No. 140 at 2. There are at least two obvious problems with the government's assertion. First, the government has not attached the operative complaint or class certification order in Ramah so that this court could determine whether plaintiff actually is a member of the class. Second, the Ramah litigation was commenced 23 years ago, in 1990, and the class was certified 20 years ago, in 1993. See Ramah Docket Nos. 1 & 96. The time for the government to notify the court that plaintiff was barred from pursuing its claims was 13 years ago, when plaintiff filed this lawsuit against the government, not two weeks ago. This lawsuit has now been litigated all the way to a final judgment by settlement, and accordingly, there is no longer a "claim" to be barred by plaintiff's alleged class membership. Rather, plaintiff seeks to enforce the judgment which both parties agreed to in this litigation. In short, this contempt proceeding is not barred by plaintiff's alleged membership in the Ramah class.

ISDA, once the Tribe has submitted a proposal for a self-determination contract, "or a proposal to amend or renew" such a contract, the Secretary "shall" approve the proposal and award the contract within ninety (90) days, unless an enumerated reason for refusal exists.  25 U.S.C. § 450f(a)(2).

The amount of funds provided to the Tribe under these contracts is to be no less than the amount the Secretary would have spent to run the program, plus "contract support costs."  25 U.S.C. § 450j-1(a)(1) & (2) ("There shall be added to the amount required by paragraph (1) contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management"); Salazar, 132 S. Ct. at 2186 ("ISDA mandates that the Secretary shall pay the full amount of 'contract support costs' incurred by tribes in performing their contracts").[2]

Late in 2008, the Tribe wrote to the Bureau of Indian Affairs ("BIA"), requesting a renewal of its "2008 Annual Funding Agreement" (the self-determination contract), for the 2009 fiscal year.  Declaration of Terry J. Lincoln [for Defendants] ("Lincoln Decl.") (ECF No. 137-1) ¶ 4 & Exh. 1.  On January 15, 2009, the Tribe entered into the requested "self-determination" contract with BIA.  BIA paid the requested funding on March 12, 2009. Lincoln Decl. ¶ 4.  At some unspecified "later" date in 2009, BIA

---

[2] See also, Cherokee Nation of Oklahoma v. Leavitt, 543 U.S. 631, 634 (2005) (when the government enters into contracts promising to pay contract support costs, that promise is legally binding).

3

agreed to pay contract support costs as well as additional funds under the contract. Lincoln Decl. ¶ 4. However, by that time, the Tribe was embroiled in a dispute over who was a member of the Tribe and who represented the Tribe. Declaration of Wayne Smith [for Plaintiff] ("Smith Decl.") (ECF No. 130) ¶ 3. The contract support costs, and the additional 2009 funds, were accordingly not paid until that dispute was resolved. Lincoln Decl. ¶ 4.

While the Tribe's leadership dispute was on-going, the BIA declined to enter into self-determination contracts with the Tribe. Smith Decl. ¶ 4. The Tribe thereupon filed this lawsuit to compel the Secretary to award the self-determination contract for 2010.

On January 5, 2012, after the Tribe had resolved its internal power struggle,[3] the Tribe and BIA settled their dispute by signing an agreement to cover the Tribe's self-determination contract requests for 2009, 2010, 2011 and 2012. See Smith Decl. ¶ 7 & Exh. 1 (attached self-determination contract includes "the grant funding for 2010 and 2011 as well as the funding for 2012");[4] Lincoln Decl. ¶ 7 & Exh. 4 (attached self-determination contract award document includes funding for 2010, 2011 and 2012).[5]

---

[3] See ECF No. 126 ¶ 1 (resolving the identity of the Tribe's governing body).

[4] The Tribe asserts that the contract was entered "[s]ubsequent" to the court's order. Smith Decl. ¶ 7. However, the cited document plainly shows that it was signed by both parties on January 5, 2012, before the court's January 13, 2012 order. See Smith Decl. Exh. 1 (ECF No. 131-1 at 1).

[5] There appears to be no further dispute about the 2009 fiscal year contract. The government paid the agreed-upon amounts,

4

1    The contract for 2010 calls for $198,562 in funding.  See Lincoln Decl. ¶ 7 & Exh. 4 (ECF No. 137-1 at 35 & 42).  The contract for 2011 calls for $198,547 in funding.  See Lincoln Decl. ¶ 7 & Exh. 4 (ECF No. 137-1 at 14).  For 2012, the contract calls for $198,244 in funding.[6]  See Lincoln Decl. ¶ 7 & Exh. 4 (ECF No. 137-1 at 35 & 43).  This totals $595,353 for all three years.

On January 13, 2012, the court entered a judgment approving the parties' stipulated settlement.  See ECF No. 126.  Pursuant to the settlement and order, the BIA "approved the Tribe's self-determination contact requests for the fiscal years 2009, 2010, 2011, and 2012."  ECF No. 126 ¶ 2.  The settlement and order further provided that BIA

> shall transfer the amounts provided in those requests to the Tribe's bank account … in accordance with the terms contained in the contract award documents.

Id.

Plaintiff seeks a contempt order asserting that the above-quoted language from the court's order requires defendants to pay contract support costs.  Defendants assert that the court's order does not require payment of those costs.

////

---

including the contract support costs for that year.

[6] In all candor, the court cannot make heads nor tails of the submitted contracts, and does not know how the government reads them to call for these amounts.  However, the Tribe does not dispute the government's interpretations of these amounts, so the court accepts them as established.

5

**II. STANDARDS**

The Federal Rules of Civil Procedure provide:

> [i]f a judgment requires a party … to perform any … specific act and the party fails to comply within the time specified, the court may order the act to be done … by another person appointed by the court. … The court may also hold the disobedient party in contempt.

Fed. R. Civ. P. 70(a) & (e).

> In a civil contempt action, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court."

FTC v. Enforma Natural Products, Inc., 362 F.3d 1204, 1211 (9TH Cir. 2004).

**III. ANALYSIS**

The question presented here is whether the government should be held in contempt, under Fed. R. Civ. P. 70(e), for failing to pay contract support costs. Rule 70(e) contempt may issue where the court has required the party to perform any "specific act," and the party "fails to comply within the time specified." See Rule 70(a); Westlake North Property Owners Ass'n v. City of Thousand Oaks, 915 F.2d 1301, 1304 (9th Cir. 1990) (this rule applies to parties "who have failed to perform specific acts pursuant to a judgment"); McCabe v. Arave, 827 F.2d 634, 639 (9th Cir. 1987) (Rule 70 "is operative only when a party refuses to comply with a judgment").

The court's order of January 13, 2012 ordered the government to pay "the amounts provided in those requests" into the Tribe's bank account "in accordance with the terms contained in the contract award document." ECF No. 126. The only specific

amounts provided in those requests totals $595,353.  Lincoln Decl. ¶ 7.  The government paid $595,353 into the Tribe's bank accounts by July 5, 2012.  None of this is disputed.

The Tribe argues that "[t]he Judgment requires that the Federal Defendants pay the contract support costs."  ECF No. 129 at 6.  Tellingly, the Tribe never says what specific amount (or even what general neighborhood) those support costs are.  Instead, the Tribe relies solely on the following entries in the contract, listed under the title "Catalog of Federal Domestic Assistance (CFDA) – www.cfda.gov":

"CFDA Title: Indian Self-Determination Contract Support"

"BIA Program Title: TPA/Tribal Government/Contract Support" and

"Contract Program Category: <u>Contract Support</u>."

Giving the Tribe the benefit of every available inference, the court will tease out of these bare titles and subtitles the conclusion that the contract is a part of the "Indian Self-Determination Contract Support" program, as described within the given website.[7]  However, there is still no way to get out of these lines what <u>specific</u> amount, or even what general amount, or even how to calculate the amount, that the Tribe asserts the court's order requires defendants to pay.

Thus, even if the court were to read the contract as saying "The Secretary shall pay contract support costs to the Tribe," it

---

[7] <u>See</u> https://www.cfda.gov/index?s=program&mode=form&tab=step1&id=f2b196f01b9e678326a276341a5836ba (Indian Self-Determination Contract Support program), last visited by the court on November 22, 2014.

7

1   is still not specific and definite enough to support a contempt
2   order, since it does not state a specific amount to be paid, a
3   minimum amount to be paid, nor any formula from which the
4   defendants could figure out how much is owed.[8]

5       The court notes that according to the regulations
6   implementing the ISDA, the contract requests "must contain" an
7   identification of "the amount of direct contract support costs,"
8   as well as "[a]n identification of funds the Indian tribe or
9   tribal organization requests to recover for indirect contract
10  support costs."  25 C.F.R. § 900.8(h)(2) & (3).  If the Tribe had
11  complied with this requirement, or if the Secretary had insisted
12  that the Tribe comply, then perhaps there would be a specific
13  amount in the contract to which the court's order could have
14  applied.  For reasons neither side explains, however, the Tribe's
15  contract requests did not include these required, specific
16  contract support cost amounts.  See Smith Decl. ¶ 9 (admitting

---

[8] The applicable regulations specify how these costs are calculated.  The Secretary determines the amount of indirect contract support costs by: (a) applying the negotiated indirect cost rate to the appropriate direct cost base; (b) using the provisional rate; or (c) negotiating the amount of indirect contract support.  25 C.F.R. § 1000.140; see Cherokee Nation, 543 U.S. at 635 ("Most contract support costs are indirect costs 'generally calculated by applying an "indirect cost rate" to the amount of funds otherwise payable to the Tribe'").  It is undisputed that in this case, the parties reached agreement on the contract support costs on June 25, 2013, 18 months after the court's January 13, 2012 order issued.  See Smith Decl. ¶ 8 & Exh. 2 (ECF No. 133-1) ("Indirect Cost Negotiation Agreement" dated June 25, 2013).  Even under the Tribe's best interpretation, the court's order did not direct the Secretary to pay a specific amount – and could not have done so – when that amount would not be negotiated until a year and a half into the future.

that the Tribe and BIA "began negotiating" for contract support costs <u>after</u> the contract was signed, and <u>after</u> the court's order was issued); Salazar Opposition Brief (ECF No. 137) at 5 ("The budget submitted by the Tribe does not specify any amount for contract support costs").

It is true that by operation of law, the government is obligated to pay contract support costs related to each of the self-determination contracts.[9]  But the argument does not support a Rule 70(e) <u>contempt</u> citation, which can only apply to the violation of a court judgment, not the violation of a statute.

### IV. CONCLUSION

By failing to identify the amount of contract support costs applicable to the contract requests, even though such identification was required by the applicable federal regulations, the Tribe has made it impossible to hold defendants in contempt for failing to pay such costs.

The Tribe's motion to enforce the judgment and for contempt is therefore **DENIED**.

IT IS SO ORDERED.

DATED:  November 22, 2013.

*[signature]*
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[9] "ISDA mandates that the Secretary shall pay the full amount of 'contract support costs' incurred by tribes in performing their contracts." <u>Salazar</u>, 132 S. Ct. at 2186; 25 U.S.C. § 450j-1(a)(2) ("There shall be added to the amount required by paragraph (1) contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management").

9